**NOT FOR PUBLICATION**  **CLOSED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FARAKH VAYNBERG, | Civ. Docket No: 09-4999 (FSH) |
| Plaintiff, | Hon. Faith S. Hochberg, U.S.D.J. |
| v. | **AMENDED OPINION & ORDER** |
| SETON HALL UNIVERSITY | Date: October 26, 2010 |
| Defendant. | |

**HOCHBERG, District Judge**

**I.    INTRODUCTION**

Plaintiff *pro se* Farakh Vaynberg brings this lawsuit against defendant Seton Hall University. Ms. Vaynberg was a doctoral student in the physical therapy program at Seton Hall; she was academically dismissed from the program in May 2007. Ms. Vaynberg asserts claims for discrimination by her professor Dr. Kim Poulsen based on her religion (Judaism) under the First Amendment and 18 U.S.C. § 247. Dr. Poulsen is not a defendant.

In accordance with the Scheduling Order entered by the Magistrate Judge, Seton Hall now moves for judgment on the pleadings or, in the alternative, for summary judgment. Since the Court has considered factual material extraneous to the complaint, the Court will deem this a motion for summary judgment.[1] The parties had notice and the opportunity to file summary judgment briefs, Rule 56.1 statements, and affidavits in connection with this motion.

---

[1] The Court is not converting the motion to one for summary judgment. Rather, Seton Hall elected to attack the pleadings in addition to the factual sufficiency of Ms. Vaynberg's case in its motion. The parties have taken full discovery. The discovery period closed on July 3, 2010. Defendant filed its motion on August 6, 2010.

## II. BACKGROUND

Except where expressly noted, the following is a summary of the undisputed facts of the case. In support of its motion for summary judgment, Seton Hall filed a statement of undisputed material facts, pursuant to Local Civil Rule 56.1. Plaintiff chose not to file a responsive Rule 56.1 statement with her opposition brief. The Court may therefore deem the facts in defendant's Rule 56.1 statement as admitted, unless controverted in plaintiff's brief or contradicted by the evidence. *See Longoria v. New Jersey*, 168 F. Supp. 2d 308, 312 n.1 (D.N.J. 2001).

Seton Hall is a private, Catholic university. Ms. Vaynberg was a student in Seton Hall's doctorate program in Physical Therapy from Fall 2005 until May 2007. She was not an employee.

### A. Plaintiff's Academic Difficulties

The school's academic standards policy requires each student to maintain a GPA of at least 3.0. A student whose GPA falls below 3.0 is placed on academic probation. A student who remains on academic probation for more than two consecutive semesters is recommended for dismissal from the program. That period includes the Summer semester. In order to be removed from academic probation, a student must raise her GPA to at least 3.0.

Ms. Vaynberg's GPA following her first semester at Seton Hall (Fall 2005) was 2.56. She was notified in writing in January 2006 that she was being placed on academic probation and was informed that she had to raise her GPA to at least 3.0 by the end of the Spring

2007.[2] Ms. Vaynberg never raised her GPA above 3.0. She remained on academic probation through May 2007, when she was dismissed from the program. Her final cumulative GPA was 2.85.

Ms. Vaynberg appealed her dismissal to the Student Performance Review and Grievance Committee in May 2007. She submitted a seven-page letter setting forth the basis for her reinstatement. A copy of the letter has been filed in connection with this motion. In the letter, Ms. Vaynberg requested reinstatement for two reasons. First, she cited "significant misunderstandings" between students and the professor in her Internal Clinical Medicine course (Dr. Sameh Abdelaal), for which she received an "F" grade in Fall 2006. Second, she claims that her "unsatisfactory" grade in her Clinical Practicum II course in Spring 2007 was undeserved. The "unsatisfactory" grade in Clinical Practicum II was not included in plaintiff's GPA. The letter makes no mention of religious discrimination.

### B. Plaintiff's Claim of Discrimination by Dr. Poulsen

Ms. Vaynberg alleges that in Fall 2006, she requested from her Clinical Integration Seminar I professor, Dr. Kim Poulsen, that she be excused from class on October 2, 2006 to celebrate Yom Kippur. She claims that an assignment was due on that day. According to Ms. Vaynberg, Dr. Poulsen responded sarcastically and indicated that she should choose between her faith and her school work. Ms. Vaynberg further alleges that Dr. Poulsen continued to harass and belittle her throughout the rest of her time at Seton Hall. Dr. Poulsen denies Ms.

---

[2] Seton Hall has submitted an affidavit averring that that was a typographical error: it should have read Summer 2006 – *i.e.*, two semesters after her placement on probation. Nevertheless, plaintiff remained at Seton Hall through Spring 2007, a year longer than she was entitled to under the graduate school's policy.

Vaynberg's allegations, both as to what he said and as to an assignment being due on October 2. Ms. Vaynberg contends that in response to her conversation with Dr. Poulsen, she attended his class on October 2 and, allegedly as a result, felt compelled to take – and failed – a mid-term examination in a different course taught by a different professor (Dr. Howard Phillips) that was conducted on the same day.[3]  For this she blames Dr. Poulsen.

Dr. Phillips had excused the Jewish students in his courses from attending class on October 2.  A Jewish classmate of Ms. Vaynberg's has averred that Dr. Poulsen also excused the Jewish students from his class on that day to celebrate Yom Kippur.  Dr. Phillips and the classmate deny that a test was administered in either of Dr. Phillips's Monday classes on October 2, 2006.  The course schedule corroborates those averments.  Instead, Dr. Phillips avers that Ms. Vaynberg failed a mid-term in MS I: Extremities on Tuesday October 17, 2006.  Ms. Vaynberg was permitted to re-take the mid-term and, on her second try, obtained a "C."

Ms. Vaynberg ultimately received a final grade of "B+" from Dr. Poulsen in Clinical Integration Seminar I.  Ms. Vaynberg's cumulative GPA in Dr. Poulsen's courses in Fall 2006 and Spring 2007 was 3.67.  Ms. Vaynberg received a final grade of "B" in MS I: Extremities in Fall 2006, taught by Dr. Phillips.  She received a "B+" in both Clinical Imaging and Orthopedic Clinical Medicine.

### C. Subsequent Contacts with Dr. Poulsen

Ms. Vaynberg complains that Dr. Poulsen accepted, and wrongfully conspired to obtain, an inaccurate or false review of her performance in her Clinical Practicum II course in

---

[3] At her deposition, Ms. Vaynberg testified that the exam was in one of Dr. Phillips's two Monday classes: Clinical Imaging or Orthopedic Clinical Medicine.

Spring 2007 from the Clinical Supervisor, Ms. Carolin Zamorski.  This is the class in which plaintiff received the "unsatisfactory" grade, referenced above, that was not included in her overall GPA.  Ms. Vaynberg contends that Dr. Poulsen was complicit in Ms. Zamorski giving her a poor performance review because he allegedly admitted to "squeez[ing] these words out of her mouth."  Dr. Poulsen acknowledges using that phrase but contends that, in context, he was telling plaintiff not to blame Ms. Zamorski for giving her a poor review, since Ms. Vaynberg's ultimate grade was his decision and not Ms. Zamorski's.

Ms. Vaynberg further contends that, having compiled sufficient information to "get rid of" her, Dr. Poulsen had a meeting with her and her academic advisor.  Following this meeting, Ms. Vaynberg was very upset.  She claims that she had several more meetings with Dr. Poulsen during the finals period, which supposedly rendered her unable to study enough to bring her GPA above the 3.0 threshold.  There is no evidence in the record (and Ms. Vaynberg does not contend) that Dr. Poulsen – as opposed to her poor grades – caused her to be academically dismissed from the program.  Ms. Vaynberg also does not contend that her grades in Dr. Poulsen's courses during the 2006-07 academic year contributed to her dismissal.  Instead, Ms. Vaynberg blames Dr. Poulsen for her poor grades in other courses.

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In

other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 860 (3d Cir. 1990).

   The party seeking summary judgment always bears the initial burden of production. *Celotex*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. This burden can be "discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

   To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, thus establishing the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some

metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id*. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50.

IV.     DISCUSSION

    A.     Causation

Seton Hall argues that, based on the undisputed facts, the alleged religious discrimination did not cause Ms. Vaynberg's alleged injury: dismissal from the program by Seton Hall.  During the period of alleged religious discrimination, Dr. Poulsen awarded Ms. Vaynberg some of her best grades (amounting to a 3.67 GPA in the Fall 2006 through Spring 2007).  These grades, on their own, would have been sufficient for Ms. Vaynberg to remain in the program.  Although Dr. Poulsen did award Ms. Vaynberg an "unsatisfactory" grade in Clinical Practicum II, based on the recommendation of her clinical instructor, Ms. Zamorski, that grade did not factor into her GPA.  It did not contribute to Ms. Vaynberg's academic dismissal from the program.  In sum, the person who is alleged to have been hostile to Ms. Vaynberg did not contribute to her dismissal by awarding her poor grades, but rather helped her in her (unsuccessful) attempt raise her GPA above the 3.0 threshold.

Nor could a reasonable fact finder infer from Dr. Poulsen's alleged statements that religious discrimination was the cause of Seton Hall's decision to dismiss Ms. Vaynberg.  As the

Third Circuit has explained, derogatory comments by someone who (like Dr. Poulsen) is "outside of the decisionmaking chain are stray remarks, which, standing alone, are inadequate to support an inference of discrimination" by those responsible for the decision to dismiss a plaintiff. *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 521 (3d Cir. 1997). Ms. Vaynberg also concedes that she did not bring the alleged discrimination to the attention of the school until approximately eight months after her academic dismissal, when she threatened to sue.

   Ms. Vaynberg does not dispute either of the foregoing propositions. Her theory of causation is that Dr. Poulsen's alleged conduct in the 2006-07 academic year caused her to perform poorly in her other courses (but not in his). This theory fails as a matter of law. Ms. Vaynberg alleges that she failed a mid-term examination on Yom Kippur (October 2, 2006) in a course taught by Dr. Phillips, because Dr. Poulsen bullied her into attending his (Dr. Poulsen's) class that day. This fails for two reasons. First, it is undisputed that Dr. Phillips had given Ms. Vaynberg and the other Jewish students leave to miss class. Ms. Vaynberg does not contend that Dr. Poulsen compelled or had the authority to compel Ms. Vaynberg to attend Dr. Phillips's class. Instead, she testified that it was her own choice to take the exam on Yom Kippur. Second, on the record before the Court, there is no genuine issue of fact that the exam that Ms. Vaynberg failed actually occurred on October 17, 2006 (in MS I: Extremities) and not on October 2, 2006; Seton Hall adduced substantial evidence of the date of the exam, unrefuted by any evidence adduced by Ms. Vaynberg.

   Ms. Vaynberg further alleges that her distress about receiving an "unsatisfactory" grade in Clinical Practicum II, in combination with lost time to study due to her numerous meetings with Dr. Poulsen during the finals period, caused her to perform poorly on her Spring

8

2007 final exams. However, Ms. Vaynberg has submitted no evidence showing that she would have performed better in her other classes but for Dr. Poulsen's alleged conduct, except for her own speculation. Speculation is an insufficient factual basis to establish causation as a matter of law. *See Bushman v. Halm*, 798 F.2d 651, 659 (3d Cir. 1986) (commenting that it is "hornbook law that a jury should not be allowed to speculate on the issue of causation"). This conclusion is buttressed by the fact that Ms. Vaynberg's grades were also poor prior to any alleged discrimination. No reasonable fact finder could find based on the evidence that the alleged discrimination caused Ms. Vaynberg's academic dismissal.[4]

### B. First Amendment

Ms. Vaynberg contends that Seton Hall discriminated against her based on her religion, in violation of the First Amendment. Ms. Vaynberg is Jewish. The First Amendment prohibits Congress from, among other things, abridging the free exercise of religion. The Fourteenth Amendment extends this prohibition to the states. Seton Hall moves for summary judgment on this claim for two independent reasons. First, as a private university, Seton Hall argues that the First Amendment does not apply to it. Second, Seton Hall argues that, even accepting Ms. Vaynberg's version of events, there has been no factual showing that Seton Hall – as distinct from Dr. Poulsen, who is not a defendant – intended to discriminate against her based

---

[4] Ms. Vaynberg argues that she is suing not only for her academic dismissal, but also for the cost of her student loans, loss of earnings, mental anguish, and loss of the ability to pursue work as a physical therapist. Her argument is unavailing. First, most of these "claims" are ancillary to her claim for wrongful dismissal from school. Second, they must be attributable to Seton Hall to be actionable. Seton Hall is not alleged to have engaged in any form of supposed "discrimination" besides academically dismissing Ms. Vaynberg from the program.

on her religion.[5]

In order for the First Amendment to apply, the challenged conduct must be deemed "state action." *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838-43 (1982) (affirming dismissal of First Amendment discrimination claim against private school because defendant's conduct was not "state action"); *Martin v. Univ. of New Haven, Inc.*, 359 F. Supp. 2d 185, 188-89 (D. Conn. 2005) (dismissing claim by student alleging religious harassment by professors at private school on grounds that defendant did not act "under color of law"). Seton Hall is a private, Catholic university. Conduct by a private party is deemed "state action" where a state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Rendell-Baker*, 457 U.S. at 840. Ms. Vaynberg has not come forward with any evidence to show that, notwithstanding Seton Hall's private status, the particular conduct relevant to this lawsuit was "fairly attributable to the State." *Id.* Indeed, the challenged conduct was Seton Hall's evaluation of Ms. Vaynberg's academic performance and its decision to dismiss her from its Physical Therapy program due to that performance (which Ms. Vaynberg claims was tainted by religious discrimination). There is no suggestion whatsoever from these facts that either the state of New Jersey or the federal government was involved in Seton Hall's decision in any way. Because there is no evidence from which a reasonable fact finder could conclude that Seton Hall's conduct relevant to this lawsuit was "state action," Seton Hall is entitled to summary judgment.

---

[5] In order to be liable for discrimination in violation of the First Amendment, the defendant itself must have purposefully discriminated against the plaintiff; liability does not attach under the theory of respondeat superior. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).

### C. 18 U.S.C. § 247

As an alternative theory to the First Amendment, plaintiff contends that Seton Hall is liable to her under 18 U.S.C. § 247. 18 U.S.C. § 247(a)(2) imposes criminal liability on anyone who, in a manner affecting interstate commerce, "intentionally obstructs, by force or threat of force, any person in the enjoyment of that person's free exercise of religious beliefs, or attempts to do so." This statute provides no basis for civil liability. *Levai v. Law*, 235 F. App'x 684, 685 (9th Cir. 2007). Consequently, Seton Hall is entitled to summary judgment on this claim as well.

### V. CONCLUSION & ORDER

For the reasons set forth in this opinion, Seton Hall's motion for summary judgment (docket # 57) is **GRANTED**. This case is **CLOSED**.

 

  /s/ **Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.